## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **TIM MARLOWE**<br>7372 Hunting Lake Dr.<br>Concord, OH 44077<br>**On his own behalf and for all others similarly situated,**<br><br>        Plaintiff,<br><br>   **VS.**<br><br>**THE NATURE'S BOUNTY CO.**<br>C/O Corporation Service Company,<br>Registered Agent<br>80 State Street<br>Albany NY 12207<br><br>and<br><br>**ALPHABET HOLDING COMPANY, INC.**<br>C/O Corporation Service Company,<br>Registered Agent<br>2711 Centerville Rd., Suite 400<br>Wilmington, DE 19808<br><br>        Defendants. | CASE NO.: 1:17-CV-00332<br><br><br>JUDGE Patricia A. Gaughan<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

### INTRODUCTION

1.     The Defendants, The Nature's Bounty Co. and Alphabet Holding Company, Inc., violate specific provisions of the Ohio Consumer Sales Practices Act and the regulations prohibiting false "free" advertisements, by telling consumers they were receiving "free" product, when they were not.

2.     The Defendants manufacture and market dietary supplements.

3.    The labels on the Defendants' products state that consumers are receiving free tablets. (As used in this Complaint, "tablet" means tablets, gel caps, softgels, capsules, pills or other form in which Defendants' dietary supplements are consumed.)

4.    The Defendants' representations of "free" tablets are stated either in the form of a percentage (e.g. "100% more free"), or a specific quantity of tablets (e.g., "50 more free"). In every instance, the "more free" representation is false.

5.    The bottles of Defendants' dietary supplements bearing the "more free" language have contained the same quantity of supplements for years. For example, consumers purchasing a 180 count bottle of the Defendants' 1 milligram melatonin tablets in July 2016 were told on the bottle that they were receiving "100% more free." To be true, that would mean at some earlier date, the Defendants' bottles of melatonin tablets contained 90 tablets, and that an additional 90 tablets were added at no charge. But this was not the case. From May 2013 through at least July 2016, the bottle contained the exact same number of tablets—180. So, there was nothing "more" in the bottles. Since there was nothing "more" in the bottles that also means there was nothing "free" in the bottles.

6.    The Defendants' conduct violates the Ohio Consumer Sales Practices Act ("the CSPA").

7.    Under the CSPA, "[o]nly the supplier's regular price for the goods or services to be purchased may be used as the basis for a 'free' offer." OAC 109:4-3-04(E).

8.    Also, a "price is not a regular price if … [i]t is a price which has not been used in the recent past[.]" OAC 109:4-3-04(F)(1)(b).

9.    Therefore, "[c]ontinuous or repeated 'free' offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail

themselves of the 'free' goods will, by lapse of time, become the regular price for the 'free' goods … together with the other goods … required to be purchased. Under such circumstances …, an offer of 'free' goods … is merely illusory and deceptive." OAC 109:4-3-04(H).

10.     As a result of Defendants' illegal conduct, Plaintiff and other similar customers were not given the promised free product and they sustained damages in the value of that missing product, which Ohio common and statutory law entitles them to recover.

## PARTIES

11.     Plaintiff Tim Marlowe is a resident of Lake County, Ohio.

12.     Defendant Alphabet Holding Company, Inc. ("Alphabet") is a Delaware corporation with its principal place of business being 2100 Smithtown Avenue, Ronkonkoma, New York 11779.[1]

13.     Defendant The Nature's Bounty Co. is a Delaware corporation with its principal place of business at 2100 Smithtown Avenue, Ronkonkoma, New York 11779. The Nature's Bounty Co. is a wholly owned subsidiary of Alphabet.

14.     The Defendants' products are sold directly including at drug stores, supermarkets, warehouse clubs, and mass merchandisers such as Wal-Mart, Sam's Club, CVS, Duane Reade, Walgreens, Kroger, and Target and to independent pharmacies, health food stores, the military, and other retailers.

## VENUE

---

[1] The 10-K SEC filings of both The Nature's Bounty Co. (formerly NBTY) and Alphabet are filed and certified by the same person (Dipak Golechha, CFO), their language on marketing and exposure related to marketing representations are identical, and both identically state that "Nature's Bounty" product is their branded product.

15.     This action is properly venued in this Court because Lake County is a county in which the Defendants conducted activity that gave rise to the claim for relief, and it is the county in which part of the claim for relief arose.

## PERSONAL JURISDICTION

16.     This Court may properly exercise personal jurisdiction over the Defendants because the cause of action arises from Defendants transacting business in Ohio by selling their dietary supplements in Ohio.

## FACTS

### 1.  Defendants' more-free products and Plaintiff's purchase

17.     The Defendants sell various vitamins or supplements using the "more free" labeling ("the more-free products") including under the brand name Nature's Bounty.

18.     This case covers those product labeled "more free," including but not limited to:

a) Nature's Bounty Biotin Ultra Strength, 10000MG, softgels. The ~~60~~ 120-softgel bottle of this product bears a "100% more free" label beginning no later than September 2013, and continuing through at least August 2016. The quantity of "~~60~~ 120 softgels" (including the struck-through lesser amount) was consistent throughout this period.



b) Nature's Bounty, Melatonin, 1MG, tablets. The 180-tablet bottle of this product bears a "100% more free" label beginning no later than May 2013,

and continuing through at least August 2016. The quantity of "~~90~~ 180 tablets" (including the struck-through lower count quantity) was consistent throughout this period.

c) Nature's Bounty, Glucosamine Chondrotin Complex capsules. The 110-tablet bottle of this product bears a "50 more free" label beginning no later than May 2013, and continuing through August 2016. The quantity of "~~60~~ 110 capsules" (including the struck-through lower count quantity) was consistent throughout this period.



19.     Moreover, upon information and belief, Plaintiff believes there are many other "more free" products where Defendants represented to consumers they would receive "more free" when that was false and the consumer was getting nothing free.

20.     The "more free" representation on the bottles of more-free products were placed on the bottles by the Defendants.

21.     Between April and June of 2016, Plaintiff purchased Defendants' more-free products at the CVS store located at 265 E. Erie Street, Painesville, OH 44077.

7

22.    Plaintiff purchased Nature's Bounty Biotin Ultra Strength, 10000mg ~~60~~ 120 –

softgels. The bottle purchased by the Plaintiff was labeled as containing "100% more free" tablets.

Attached is a photo of the bottle with the more free promise.





23.     As with all of the more-free products referenced in this lawsuit, the bottle of the Defendants' product purchased by the Plaintiff did not contain any free tablets. Instead, the Defendants' bottles of Nature's Bounty Biotin Ultra Strength, 10000mg 60 120 – softgels contained the same quantity of tablets since at least 2013.

24.     During the class period, the Defendants never changed the quantity of the products in a manner that would cause the "more free" labels to accurately reflect the pricing of the more-free products. Instead, the quantity of tablets as packaged and sold by the Defendants remained constant throughout that period, so no consumer, during the class period, received "more free" product as advertised on the bottle.

## 2.  Manufacturing and labeling of Nature's Bounty's products

25.     Nature's Bounty is not a remarketer of generic medications manufactured by others and available to any willing buyer.

26.     Nature's Bounty products are proprietary and based on careful research and scientific analysis by or for Nature's Bounty for the specific product and its specific use.

27.     Upon information and belief, Nature's Bounty contracts with third parties to manufacture its products in conformity with Nature's Bounty's specifications.  The "Nature's Bounty" name and the unique symbol is also proprietary to Nature's Bounty and is trademarked. Nature's Bounty not only controls the content of the bottles of product it sells, but also the configuration and wording of the bottle labeling.

28.     Nature's Bounty made the specific business and marketing decision to place the "free" wording on the subject bottles.

29.     Nature's Bounty made the specific business and marketing decision of the exact words that were to be used in the "free" section of the bottle labeling.

30.     The "more free" language on the bottle of Nature's Bounty product is a direct communication from Nature's Bounty to the consumer.

31.     Nature's Bounty specifically intended that wording and the placement of the "free" language on the label to be an inducement to purchase the product. Nature's Bounty intends to directly benefit from all such purchases, and did for the purchases by Marlowe and the class.

32.     Nature's Bounty knows the specific number of bottles for each of its products that it sold with the "free" labeling.

33.     Nature's Bounty is not a component part manufacturer as relates to the products that are subject to this litigation, but designs, manufacturers, packages and labels the complete and sealed unit sold to  customers, including Marlowe and the class members.


### **3.  Retailing**

34.     Nature's Bounty has made the specific business decision (and adopted the specific marketing and sales format) not to offer its products through any brick and mortar stores which it owns, but to sell its products through established retailers like Walgreens, CVS, Walmart, etc.

35.     By the marketing method chosen by Nature's Bounty, Nature's Bounty cannot continue to receive any benefit and payment for its products unless retail customers purchase the products.

### **4.  Financial arrangements and profit in sale of Nature's Bounty products**

36.     Upon information and belief, Nature's Bounty has arranged its economics so that some or all of its retailers first pay upfront for Nature's Bounty products, then remit to Nature's Bounty a percentage of the sales of those products.

37.     The only way Nature's Bounty continues to receive a benefit and profit from the subject products is if customers like the Plaintiff and the class members buy those products.

38.     Nature's Bounty will discontinue manufacturing and selling specific products in its line that are not receiving sufficient sales, as Nature's Bounty defines that metric using its own business judgment.

39.     Nature's Bounty's profits and its income stream to receive profits has been determined by Nature's Bounty to be directly tied to the purchase of its products by consumers like the Plaintiff and the class members.  Nature's Bounty has therefore spent substantially in developing its branding, product quality, labeling, and overall reputation with the intent of driving sales of the subject products to customers like the Plaintiff and the class members.

40.     Nature's Bounty received a benefit from the Plaintiff and the class members from their purchases of the subject products, and in fact structured its business, including the challenged 'free' markings, to cause it to receive those benefits and in reliance on receiving those benefits.

41.     There is no statute applicable to the claims in this complaint that prohibits recovery of unjust enrichment for these claims by these claimants.

42.     The statute upon which this claim is based specifically allows recovery to the purchaser-class members for this wrongful conduct.

43.     Nature's Bounty, as the manufacturer of the product, marketed its product directly to consumers, but sold its product through an intermediary, i.e. a retail outfit. Defendant manufacturer has made false claims and misrepresentations directed for the purpose of generating retail sales.  Those retail sales have the intended effect of increasing the amount of wholesale sales to the manufacturer.  Defendants received funds that they otherwise would not have received and

which it would be unjust for them to retain as a result of their fraudulent conduct and misrepresentations.

44.     Plaintiff and other class members would not have purchased Nature's Bounty products, absent Defendants' misrepresentations, if the true facts had been known.

45.     Customer payments made by Marlowe and the class members were directly shared by Nature's Bounty and its retailers.

46.     Unlike a case where purchasers goes to a retailer to buy its brand product, and finds a failed part from some component supplier, Marlowe bought and paid for Nature's Bounty supplement, not a CVS product.

47.     Nature's Bounty's conduct is specifically prohibited by Ohio law, for the specific benefit and protection of the person bringing this suit, therefore presenting an issue about Nature's Bounty's just entitlement in this situation.

## CLASS ALLEGATIONS

48.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

49. Plaintiff brings this action on behalf of himself and all other similarly situated persons.

50. The Plaintiff proposes the following class definition: Any Ohio resident who, during the six-year period immediately prior to the filing of this lawsuit and thereafter, purchased any of the Defendants' products in Ohio marked on the bottle as a "more-free" product (e.g. "50 more free tablets"; "100% more free") where the product had not been sold at a similar price without that additional "more-free" product for at least 28 of the 90 days preceding the class member's purchase. The class excludes Defendant's employees, representatives, court officials in this case, and any individual already party to a suit against Defendants challenging advertised pricing.

12

51. The class numbers over 40 persons. The class is so numerous that joinder of all members is impracticable. And, it is impracticable to bring all such persons before this Court.

52. The injuries and damages to the class members present common questions of law and fact, including:

    a)    Is the statement "more free" deceptive where made for a product that has not been sold on a regular basis for a lesser volume at a similar price?

    b)    Were the Defendants' products included in the class labeled "more free" during the class period?

    c)    Was the "more free" representation made by the Defendants a deceptive act under the CSPA?

    d)    Did the class members suffer damages as a result of the Defendants' deceptive conduct?

    e)    Should Defendants' conduct be enjoined?

    f)    Should Defendants disgorge some or all of the proceeds of the sales of products labeled "more free?"

53. The Defendants have engaged in the same conduct with respect to all of the class members.

54. The named Plaintiff's claims, defenses, and injuries are typical of the claims, defenses, and injuries of all of the class members.

55. The named Plaintiff will fully and adequately protect and represent the interests of the class members.

56. The identity of the class members cannot be determined at this time, but will be determined later.

57. The prosecution of separate actions by each class member would create a substantial risk of inconsistent or varying adjudications for each individual class member that would establish incompatible standards of conduct for the Defendants.

13

58. The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of the class, which, as a practical matter, would be dispositive of the interests of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect those interests.

59. The maintenance of this suit as a class action is the superior means of disposing of the common questions that predominate herein.

**FIRST CLAIM FOR RELIEF**
**Ohio Consumer Sales Practices Act**
**R.C. 1345 *et seq.***

60.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

61.    The Defendants are suppliers under R.C. 1345.01(C).

62.    The Defendants placed the "more free" representation on the more-free products to induce consumer transactions.

63.    The Defendants' "more free" representation was on the label of the products purchased by the Plaintiff.

64.    The Plaintiff is a consumer under R.C. 1345.01(D).

65.    The Plaintiff's purchase of the more-free product was a consumer transaction under R.C. 1345.01(A).

66.    The Plaintiff made his purchase for personal or household use.

67.    Under R.C. 1345.05, the Attorney General has the authority to adopt rules defining with reasonable specificity the acts and practices that violate the CSPA. R.C. 1345.05; OAC 109:4-3-01(A)(2).

68.     At OAC 109:4-3-04(H), the Attorney General has adopted a rule that provides: "Continuous or repeated 'free' offers are deceptive acts or practices since the supplier's regular price for goods to be purchased by consumers in order to avail themselves of the 'free' goods will, by lapse of time, become the regular price for the 'free' goods or services together with the other goods or services required to be purchased. Under such circumstances, therefore, an offer of 'free' goods or services is merely illusory and deceptive."

69.     Here, by lapse of time, the "free" tablets contained in the bottles of the more-free products became part of the regular quantity of tablets in the bottles of such products, and the regular price for a bottle of a more-free product included both the regular quantity *and* the purportedly "free" tablets.

70.     By continuously making the "more free" offer, the Defendants' "more free" offer became deceptive.

71.     For example, by continuously offering a 110-tablet bottle of Nature's Bounty, Glucosamine Chondroitin Complex capsules, the 110-tablet bottle became the regular size, and the price of that bottle became the regular price. Labeling such a 110-tablet bottle of Glucosamine Chondroitin Complex as containing "50 more free" was deceptive, because the Defendants did not offer a 60-tablet bottle at the same price as the 110-tablet bottle or at all. Consumers who purchased the 110-tablet bottle were not receiving any free tablets. Instead, they were receiving the regular amount of a 110-tablet bottle of Glucosamine tablets.

72.     By violating OAC 109:4-3-04(H), the Defendants engaged in deceptive conduct under the CSPA, and thereby violated the CSPA.

73.     Given the express language of OAC 109:4-3-04(H), the Defendants were on notice that their acts and practices violated the CSPA.

74.     Defendants engaged in the same conduct set forth above with the members of the class.

75.     As a direct and proximate result of the Defendants' CSPA violations, the Plaintiff and the class members have been injured in an amount to be determined at trial.

76.     The Plaintiff and the class members are entitled to actual damages for the value of the "free" tablets that they did not receive. For example, if the Plaintiff purchased a 180-tablet bottle of a more-free product, and Defendants affixed a "50% more free label" to the bottle, Plaintiff is entitled to damages equal to the value of 90 additional tablets that were not received.

77.     Alternatively, the Plaintiff and the class members are entitled to statutory damages under the CSPA.

78.     A federal district court sitting in diversity, when applying Ohio law, should permit a class action, under Federal Rule of Civil Procedure 23, for statutory damages under Ohio's Consumer Sales Practices Act, in spite of Ohio's bar on such class action claims for statutory damages. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 393 (2010).

79.     Under *Shady Grove,* an Ohio statute restricting class actions does not apply in federal court. Rule 23 controls. See *Lisk v. Lumber One Wood Preserving, LLC,* 792 F.3d 1331, 1336 (11th Cir.2015).

80.     District courts in Ohio have erroneously treated Justice Stevens' concurrence as the holding in *Shady Grove.* When a fragmented court decides a case, and no single rationale explaining the result enjoys the assent of five justices, the holding of the court is the position taken by the judge concurring on the narrowest grounds. *U.S. v. Cundiff,* 555 F.3d 200, 208 (6th Cir.2009). An opinion is narrower than another if it is a logical subset of the other. *Id.* at 209. But Justice Stevens' concurrence was not the logical subset of the plurality opinion in *Shady Grove*.

See *In re Hydroxycut Marketing and Sales Practices Litig.,* 299 F.R.D. 648, 653 (S.D. Cal. 2014). In fact, the plurality opinion in *Shady Grove* expressly addressed Justice Stevens' approach to the issue before the Court and rejected it. *Shady Grove,* 559 U.S. at 411. Therefore, the only binding aspect of the decision is the specific result. *Hydroxycut,* 299 F.R.D. at 653. In *Shady Grove,* the specific result was that a state law ban on a class action claim for statutory damages conflicted with Rule 23, and Rule 23 controlled. That result applies here.

81.     Alternatively, the Plaintiff and the class members are entitled to restitution in the form of the Defendant's net profits on their transactions.

82.     Under R.C. 1345.09(B), consumers may "recover damages or *other appropriate relief* in a class action under Civil Rule 23, as amended."

83.     Restitution is appropriate relief under the CSPA. "Only by ordering restitution ... can [a court] give effect to the expressed intention of [the Ohio] legislature to provide a strong consumer protection program which safeguards the public interest and well-being of consumers." *Motzer Dodge Jeep Eagle, Inc. v. Ohio Attorney General,* 95 Ohio App.3d 183, 191 (12th Dist. 1994).

84.     Restitution is also appropriate relief under Rule 23: "[N]othing in Civ.R. 23(B)(3) limits classes certified under that provision to classes seeking the recovery of money damages or otherwise precludes the certification of classes seeking equitable relief[.]" *San Allen, Inc. v. Buehrer,* 11 N.E.3d 739, 2014-Ohio-2071, ¶ 61 n.19 (8th Dist.).

85.     Restitution measures the remedy by the Defendants' gain and seeks to force disgorgement of that gain. It differs from damages, which measures the remedy by the Plaintiff's loss.

86.     Here, an appropriate remedy in restitution would be the disgorgement of the Defendant's net profits on its deceptive and misleading "free" offer in Ohio.

## SECOND CLAIM FOR RELIEF
## Unjust Enrichment

87.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

88.     This claim asserts that is unjust to allow Defendants to retain profits from their deceptive, misleading, and unlawful conduct alleged herein.

89.     As detailed in paragraphs17-47, Plaintiff conferred a benefit on the Defendants by purchasing their products.

90.     Defendants retained that benefit, and have never refunded any portion of the Plaintiff's purchase price.

91.     To determine if Defendants' retention of that benefit is unjust, the Court must consider the balance of the equities. *San Allen v. Buehrer,* 11 N.E.3d 739, 2014-Ohio-2017, ¶ 115 (8th Dist.)

92.     Here, Plaintiff has superior equity.

93.     Plaintiff has superior equity because Defendants' continuous "free" offer has been defined as deceptive in the Ohio Administrative Code.

94.     Plaintiff also has superior equity, because, as other courts have recognized, advertised price reductions are material to a purchase decision: "[P]rice reductions [are] material because consumers 'reasonably regard price reductions as material information when making purchasing decisions.'" *Munning v. The Gap, Inc.,* No. 16-cv-03804-THE, 2016 WL 6393550, *7 (N.D. Cal. Oct. 28, 2016).

95.     If "the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R. § 223.1(a).

96.     Due to Defendants' deceptive and misleading conduct, Plaintiff has the superior equity, and Defendants received benefits under circumstances where it would be unjust to retain these benefits.

97.     Defendants have knowledge and/or an appreciation of the benefit conferred upon them by Plaintiff and the putative class members.

98.     Defendants have been unjustly enriched.

99.     Plaintiff and the putative class members are entitled to restitution and/or disgorgement of net profits, and all other benefits, and compensation obtained and retained by the Defendants from their deceptive, misleading, and unlawful conduct in Ohio.

### THIRD CLAIM FOR RELIEF
**Fraud**

100.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

101.     Defendants represented to Plaintiff and the class members a regular price on purchased items, and also that they were receiving "more" product "free."

102.     These representations about price and volume of the product were material to the sale of the products.

103.     The representations were false, since the stated prices and volume were not regular prices or amount, and Plaintiff and the class members received nothing for "free" and Plaintiff did not receive the extra 50 pills, or 100% more pills, he was promised.

104.    Plaintiff received nothing at all for free, and Defendants' representations to the contrary were false. They were the regular and everyday volume and price of the item, not discounted or additional free.

105.    Defendants knew that Plaintiff and the putative class members would be misled by these representations.

106.    Defendants intended that Plaintiff and the putative class members would rely on these representations to induce customers into making purchases.

107.    Defendants had no intention of ever offering Plaintiff and the putative class members any "more" product for "free" since they knew the advertised discounted price was actually the regular every day amount and price of the product.

108.    Defendants intended Plaintiff and the putative class members to justifiably rely on these representations of "more free" product by purchasing the product, and Plaintiff and the class made those purchases.

109.    Plaintiff and the putative class members were harmed by Defendants' fraudulent representations in the value of the product they did not receive and are entitled to recover that amount from Defendants, with all other remedies provided by law.

### PRAYER FOR RELIEF

**Wherefore,** Plaintiff demands judgment as follows:

1.    For an Order (a) determining at the earliest possible time that this matter may proceed as a class action under Civil Rule 23, and (b) certifying the class;

2.    For compensatory damages and punitive damages;

3.    For statutory damages;

4.    For restitution;

5.      For disgorgement;

6.      For reasonable costs and attorney fees under common law and/or R.C. 1345.09(F); and

7.      For such other or further relief as the Court deems the Plaintiff and the class members entitled.

Respectfully submitted,

*/s/ Patrick J. Perotti*

Patrick J. Perotti, Esq.  (#0005481)
Nicole T. Fiorelli, Esq. (#0079204)
Frank A. Bartela, Esq. (#0088128)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391  //  (440) 352-3469 Fax

Email: *pperotti@dworkenlaw.com*
           *nfiorelli@dworkenlaw.com*
           *fbartela@dworkenlaw.com*

## CERTIFICATE SERVICE

I hereby certify that on March 3, 2017, a copy of the foregoing *First Amended Class Action Complaint* was filed electronically.  Notice of this filing will be sent by operation of the

Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties

may access this filing through the Court's system.

*/s/ Patrick J. Perotti*

Patrick J. Perotti (#0005481)
DWORKEN & BERNSTEIN CO., L.P.A.

*One of the Attorneys for Plaintiff Tim Marlowe*
